278 A.2d 848.

ROSE BLUME *vs.* THE SHEPARD COMPANY.

JULY 2, 1971.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

POWERS, J.  This civil action for negligence was tried to a Superior Court justice and a jury which returned a verdict for the plaintiff.  The case is before us on the defendant's claim of appeal from the judgment entered in accordance with the verdict.

The ultimate facts are not in dispute and are readily stated.  They establish that defendant is the operator of a department store which includes shoes as merchandise offered for sale.  For this purpose, an area of the store is set aside as a shoe department.  On September 29, 1964, plaintiff, who was familiar with the layout from previous visits, entered the store and went to the shoe department with the intention of purchasing a pair of shoes.  She walked down an aisle some three feet in width which aisle was created by a row of four chairs, the backs of which faced the back of a display case.  The chairs are of common variety and used by customers when having shoes fitted.  Shoes of particular interest to plaintiff were displayed on top of the case which was to her right, while the backs of the chairs were to plaintiff's left.  As she proceeded through the aisle thus formed, to examine a pair of shoes on the display case,

plaintiff struck the front of her left ankle against a stool which was protruding under the rear of the second chair in the row. The stool against which plaintiff struck her ankle is known as a fitting stool and there were a number of them customarily used in the department. These stools are made of metal but have an upholstered seat for the salesclerk. The stools are twenty-nine inches long and slope from a height of fourteen and one half inches above the floor at the end where the seat is placed to five and one half inches from the floor at the point where the customer's foot would rest. When not in use the stools are "pushed" lengthwise under the chairs. Further, there is evidence that the aisle or space traversed by plaintiff, although designed for use by defendant's employees, was permitted to be used by patrons in selecting shoes.

The plaintiff called, under the statute, an employee of defendant who, plaintiff had testified, sold her the shoes on the day in question. The plaintiff had testified that this employee was made aware of the injury at the time it occurred.

The employee, however, testified she did not recall the incident, but there is documentary evidence from which the jury could infer that this employee was the clerk who sold plaintiff the shoes. While not recalling plaintiff's experience, nor indeed anything similar with any other patron, this employee testified "But I've seen clerks, I've done it myself." In speaking of the fitting stools, said employee testified as follows:

> "Well, they are for the sales people, but mothers come in with children and they proceed to use these as trains; sometimes it's like a home away from home for the elderly, they pull them out and use them to rest their legs on. I mean, this is what happens, they even take a nap, some of them. But I mean, this is, they're not really for other people to use, they're really for the clerks to use."

After both parties had rested, defendant moved for a directed verdict on two grounds, first that there was no evidence whatsoever as to how long the stool in question had been protruding into the aisle. Absent such evidence, defendant contended, there was nothing from which a jury could find that defendant had notice of the dangerous condition, and without such notice could not be charged with negligently failing to keep its premises in a reasonably safe condition. It premised the notice requirement, actual or constructive, on the employee's testimony that customers, particularly children, moved such stools from their customary places. In support of its motion, defendant looked to the rule in *McVeigh* v. *McCullough,* 96 R. I. 412, 192 A.2d 437. There this court held that a storekeeper owed his patrons the duty to use reasonable care to keep his premises in a safe condition but that he was not an insurer. Continuing, we further held, that for a plaintiff who was injured on the premises to prevail she had the burden of establishing that the condition which caused the injury had remained long enough to give defendants reasonable notice, actual or constructive, of its existence and that defendants, having had such notice, negligently failed to remedy the danger or warn of its presence or existence.

The defendant's second ground on which it sought a directed verdict was that the aisle or space in which plaintiff was injured was for the use of its employees and was not an area of the premises covered by defendant's invitation. The trial justice denied defendant's motion, holding, in essence, that the facts of the case at bar distinguished it from those cases where the notice requirement was applicable. Here, he pointed out that the fitting stool was equipment regularly used in defendant's business; that when not in use, they were pushed under the chairs by defendant's employees, and, alternatively, it knew of the long-standing practice of patrons and their children moving the stools about. Con-

cluding, he stated, that puts them on notice that they should keep their house in order.

As to defendant's second ground, namely that the injury occurred at a place where plaintiff was not entitled to be, the trial justice made clear that this question was also one for the jury.

Consistent with the view that he took of the case in denying the motion for a directed verdict, the trial justice refrained from instructing the jury as to the requirement of reasonable notice. In partial support of its appeal, defendant argues that such failure was prejudicial error. However, it neither requested such charge nor objected to the trial justice's failure to so instruct. Because of the view we take of the trial justice's denial of the motion for a directed verdict, defendant's contention with regard to the trial justice's failure is wholly lacking in merit and requires no further consideration. See 1 Kent, *R. I. Civ. Prac.* §51.4.

The jury returned a verdict for plaintiff in the sum of $2,000 and judgment was accordingly entered. Within the ten days authorized by Super. R. Civ. P. 59(b), defendant moved for a new trial on the usual grounds that the verdict was against the law and against the weight of the evidence. This motion being denied, defendant seasonably appealed from the judgment previously entered.

This brings us to a consideration of the two assignments of error raised by defendant's appeal. These are that the trial justice erred in denying defendant's motion for a directed verdict, and also erred in denying its motion for a new trial.

I

The Denial of the Motion for a Directed Verdict

It is elementary that in passing on a motion for a directed verdict, the trial justice is required to view the evidence and any reasonable inference to be drawn therefrom in the light most favorable to the party against whom the motion was

made, and, when so viewed, there is a question of fact for the jury the motion must be denied. The defendant acknowledges such to be the rule, but argues that however viewed, the evidence in the instant case could not support a verdict for plaintiff. This is so, it contends, because it is as reasonable to assume that defendant had neither actual nor constructive notice of the dangerous condition for a period of time long enough to enable it to correct the condition as it is to assume that defendant was aware of this danger to its patrons and neglected to correct it.

In support of this contention, it relies on several cases in this jurisdiction, all of which, however, are readily distinguishable on their facts. However, defendant also relies on *Oelschlaeger* v. *Hahne & Co.*, 2 N. J. 490, 66 A.2d 861, where plaintiff also stumbled over a fitting stool but was denied recovery on defendant's motion to dismiss. In *Oelschlaeger,* there was no evidence as to where the fitting stool was placed when not in use, nor of defendant's knowledge that such stools were moved about by patrons. Rather, the evidence is that there were shoe clerks and patrons alike moving about in the few minutes Mrs. Oelschlaeger stood at the counter, and turning fell over a stool. She asked the court to presume that it had been negligently left there by a servant of defendant, or, in the alternative, defendant was negligent in failing to remove it.

The New Jersey court pointed out that while negligence can be inferred from established facts, it will not be presumed from facts which are susceptible to two equally reasonable but contradictory inferences. Thus the court concluded that on the facts established by plaintiff, it was as reasonable to presume that patrons moving about the shoe department had left the stool where Mrs. Oelschlaeger fell over it as it was to presume that an employee of defendant had placed it there.

Continuing, the court pointed out that if the dangerous

condition resulted from the conduct of a patron, Mrs. Oelschlaeger had the burden of establishing that such patron's conduct had come to defendant's attention in time to be remedied.

Here, it was the practice of defendant to keep its fitting stools under the chairs when not in use and the stool in question was so positioned, except that it had been pushed so far under the chair as to constitute a dangerous condition in the aisle traveled by plaintiff. Consequently, the evidence is open to the inferences that either the fitting stool had been placed where encountered by plaintiff by one of defendant's employees, or had been further pushed under the chair by a patron. In either event, it made for a dangerous condition of which defendant had long-standing knowledge and, from the evidence adduced, had never taken measures to prevent such conditions. Neither is there evidence that, in lieu of preventive measures, defendant warned its patrons. See *Dawson* v. *Rhode Island Auditorium, Inc.,* 104 R. I. 116, 242 A.2d 407. On this state of the evidence the trial justice correctly denied defendant's motion.

Neither did he err in denying the motion on the grounds that the evidence established that plaintiff's invitation did not extend to the area in which the injury occurred. In *Milliken* v. *Weybosset Pure Food Market,* 71 R. I. 312, 44 A.2d 723, this court recognized that there may be areas of a storekeeper's premises from which the public is excluded and, ordinarily, the storekeeper's duty to keep his premises in a reasonably safe condition does not extend to such areas. However, we also held that to escape liability for an injury incurred by a patron in such an area, the storekeeper must take such steps as will make it obvious to patrons that the area is not for their use and whether such steps were taken is a question of fact for the jury.

In the instant case, all the evidence is that although the aisle or space in which the plaintiff was injured was pri-

marily intended for use by defendant's employees, patrons were not forbidden to use it and, in fact, customarily did so.

## II
### Denial of Defendant's Motion for a New Trial

Although defendant predicated this motion on its contentions that the jury's verdict was against the law as well as the credible evidence and weight thereof, it makes no real argument as to the verdict being against the law. Nor could it. In reaching his decision on the new trial motion, the trial justice followed the law as he gave it to the jury. Since this is what he was bound to do, *Barbato* v. *Epstein,* 97 R. I. 191, 196 A.2d 836, it is only if the verdict is contrary to the law as given by the trial justice to the jury that a motion for a new trial can prevail on such ground. Such is not the case here.

Nevertheless, defendant argues vigorously that the evidence fairly preponderates against the jury's verdict, particularly on the issue of plaintiff's contributory negligence. In support of this argument, it points to that evidence which, in its opinion, should have been given more weight by the trial justice than he in fact chose to give it. However, it was for the trial justice, in passing on defendant's motion, to independently determine the weight of the credible evidence as he saw it. When in the exercise of his independent judgment, the trial justice finds the credible probative evidence so nearly balanced that reasonable minds could come to different conclusions, it is his duty not to disturb the jury's verdict. *Turgeon* v. *Rocks,* 96 R. I. 353, 191 A.2d 606; *Votta* v. *Calcagni,* 84 R. I. 289, 123 A.2d 402.

Furthermore, if the trial justice's decision on the new trial motion complies with the aforestated rule, that decision will not be disturbed by this court unless in reaching such decision the trial justice either misconceived or overlooked material evidence on a controlling issue, or was otherwise clearly wrong. *Covinsky* v. *Costa,* 108 R. I. 375, 275

A.2d 633. If, however, the trial justice's decision is to be set aside for any such reasons, it is appellant's burden to point out in what particular the decision must be faulted. Here, the defendant does not contend that the trial justice failed to exercise his independent judgment, nor does it point to any misconception or overlooking of material evidence. Consequently, there is no merit to the defendant's contention that the denial of its motion for a new trial constitutes error.

The defendant's appeal is denied and dismissed, the judgment appealed from is affirmed, and the case is remitted to the Superior Court.

*Bernard S. Goldberg,* for plaintiff.

*John G. Carroll,* for defendant.